# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RONALD L. GRAGG,                           CASE NO. 2:08-CV-926

                                              JUDGE WATSON

           Petitioner,                   MAGISTRATE JUDGE ABEL

v.

MICHAEL SHEETS, Warden,

           Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was indicted in March 2006 on one count each of illegal possession of chemicals for the manufacture of drugs, theft, and breaking and entering. The charges stemmed from allegations that in the early hours of March 11, 2006, appellant, Wilma Howland, and Bryan Cook entered the property of Rodney Miller in Washington Court House, Ohio, without his permission and stole anhydrous ammonia from his storage tanks. Anhydrous ammonia is a precursor in the manufacture of methamphetamine. Bryan Cook entered a guilty plea; appellant and Wilma Howland pleaded not guilty and were jointly tried before a jury.
>
> At trial, the state presented the testimony of Rodney Miller, the owner of the stolen anhydrous ammonia, and three deputy

sheriffs. Miller was awakened in the early hours of March 11, 2006, to the sound of a car (a Jeep) on his property. Miller stores anhydrous ammonia on his property to use as a fertilizer and has had problems in the past with people stealing the substance. Miller testified that the Jeep sped by the driveway in front of his house and drove directly to the storage tanks located 400 to 500 feet behind his house. Miller called the Fayette County Sheriff's Office to report the theft, then followed the Jeep after it left his property. Miller followed the car and stayed in contact with the sheriff's office until Sergeant James Spears of the Fayette County Sheriff's Office caught up with it and pulled the Jeep over.

Sergeant Spears testified that upon catching up with and passing Miller, he followed the Jeep for a short distance before activating his overhead lights. The Jeep did not pull over and continued driving at a slow rate of speed. The Jeep eventually stopped after Sergeant Spears activated his siren. By then, they were no longer in Fayette County but in Ross County. Wilma was in the driver's seat, appellant was in the front passenger seat, and Bryan was in the rear passenger seat. "Immediately upon approaching" the car's driver's side, Sergeant Spears "detected an extremely strong odor of ammonia. So strong in fact it gave [him] a headache almost immediately." The smell, which was coming from inside the car, was "extremely intense." Upon being identified, appellant, Wilma, and Bryan were placed in separate police cruisers. By then, Ross County Deputy Sheriff Christopher Clark was at the scene. Because of his training and experience, Deputy Clark is very familiar with anhydrous ammonia.

At the scene, Deputy Clark recognized Bryan from a previous arrest for stealing anhydrous ammonia. In fact, Bryan had stolen the same substance from the Miller property before. Deputy Clark stuck his head inside the Jeep and detected the smell of anhydrous ammonia. Sergeant Spears and Deputy Clark then walked around the Jeep, and as they approached the passenger's side, they again detected a strong odor of ammonia. The smell was stronger outside the car than it was inside. Searching the area with flashlights, the two officers discovered a glass pickle jar in the ditch that was frosted over with a white vapor coming out of it. Sergeant Spears testified that the jar was

located outside the front passenger door; Deputy Clark testified that the jar was located "probably about middle ways" between the front and the rear passenger doors. At that point, Lieutenant Kevin Pierce, a lab-certified methamphetamine technician with the Ross County Sheriff's Office, was called to the scene to test the chemicals in the jar. The jar's contents tested positive for anhydrous ammonia.

An inventory search of the Jeep yielded funnels, a pair of gloves, a few cans of starter fluid, an air compressor, and some tools. Deputy Clark testified that anhydrous ammonia, starter fluid, and funnels can be used to manufacture methamphetamine. Deputy Clark also testified that though people can use starter fluid for their vehicles, cans of starter fluid with puncture holes are 100 percent used to manufacture methamphetamine. The cans of starter fluid recovered in the Jeep had puncture holes.

At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29. The trial court denied the motion. Appellant, Wilma, and Bryan then each testified as to the events leading up to their arrest. Appellant met up with Wilma in the evening of March 10, 2006, for a drink. They rode around in Wilma's car for an unspecified period of time, during which they drank two cases of beer. Appellant drank most of it. At about 11 p.m., they went to Bryan's house. A few hours later, Bryan asked for a ride. By then, it was in the early morning hours of March 11, 2006, a Saturday. According to appellant, Bryan needed to go to his grandparents' house to get money for his children's breakfast before they went to school. According to Wilma, Bryan needed to go to his grandfather's house to get money for food. Bryan testified that he asked for a ride to his grandmother's to get money to buy beer. He further testified that his children were not at his house that morning.

Appellant, Wilma, and Bryan left in Wilma's car. As they drove, Bryan gave Wilma directions, which took them to the Miller property. Appellant did not know where they drove and did not remember driving to the Miller property, as he had been "heavily intoxicated" and "fad[ing] in and out the rest of the night." According to appellant, the next thing he remembered

was Sergeant Spears's cruiser following them. Appellant was worried about his beer consumption, as he had just gotten out of jail. Appellant also remembered the smell of anhydrous ammonia as they were driving. Although appellant never saw the jar, he surmised that he noticed the smell because Bryan had opened the jar: "I mean it just makes your eyes water and takes your breath." Appellant further remembered Bryan telling Wilma that he had stepped on a Windex bottle in her car as a way to explain the smell and Wilma ordering Bryan to throw it out. Wilma's testimony regarding the Windex bottle mirrored appellant's. Bryan denied telling them that he had stepped on a Windex bottle.

Asked whether the Jeep was the car that Wilma usually drove, appellant volunteered to explain the presence of the funnels and starter fluid in the car. Appellant explained that the items were not to manufacture methamphetamine but to handle the Jeep's mechanical problems. Appellant denied seeing puncture holes in the cans of starter fluid. Appellant also denied (1) that anybody talked about stealing anything that night, (2) that he knew they were going to steal anhydrous ammonia; had he known, Bryan would not have been in the car, or (3) that he used or manufactured methamphetamine.

Wilma denied (1) knowing they were going to steal anhydrous ammonia, (2) knowing what Bryan was doing when he was out of the car at the Miller property, (3) using or manufacturing methamphetamine, or (4) handling anhydrous ammonia, including in the car. Shortly after Bryan got back into the car, Wilma smelled something that took her breath away. Wilma denied knowing what the smell was. Then, upon noticing Sergeant Spears's cruiser behind her car, she became worried about her tail light and her beer consumption. Bryan told her the officer was not after her. Contrary to Bryan's testimony, Wilma denied being told by Bryan that he needed to throw something out before they could stop. Finally, Wilma explained that she had put the funnels, cans of starter fluid, and the air compressor in her car to handle the Jeep's mechanical problems. The gloves were her husband's. Wilma denied seeing puncture holes in the cans of starter fluid.

Bryan testified that he had stolen anhydrous ammonia from the Miller property, which he put in a glass jar. Bryan admitted bringing the jar with him, but denied bringing anything else. Bryan testified that appellant and Wilma did not know that he had brought a jar or that he was going to steal anhydrous ammonia. However, his testimony indicates that his girlfriend knew of his plan before he left his house with appellant and Wilma.

Once he was back in the car, Bryan was unable to control the "very volatile" anhydrous ammonia while directing Wilma at the same time. As a result, he asked appellant to show her the way back home. Once it started smelling in the car, he and Wilma rolled their windows down. There were otherwise no reactions from either appellant or Wilma. Bryan testified that he was holding the jar outside of his window in his bare hand, yet the jar neither burned his hands nor broke. Once Sergeant Spears was behind them, Bryan told Wilma that he had anhydrous ammonia with him and that she could not stop until he could throw it out of the window. As soon as he threw the jar out of the window, he told her to stop. Bryan surmised that between the time he told her to stop and the time the car actually stopped, they traveled 20 to 30 feet. Yet the jar was found next to the car and next to the passenger doors. Bryan denied that he was going to use the anhydrous ammonia to manufacture methamphetamine. Rather, once at home, he was going to drive to another town and sell it to a friend.

At the close of appellant's and Wilma's respective cases, the state moved the trial court to amend their indictments to conform to the evidence. Over the objections of both defense attorneys, the trial court granted the state's motion. Appellant's charges of theft and illegal possession of chemicals were amended to complicity on both counts (Wilma's indictment was similarly amended). On August 22, 2006, appellant was found guilty of complicity to illegal possession of chemicals for the manufacture of drugs, complicity to theft, and breaking and entering. He was sentenced to five years in prison.

*State v. Gragg*, 173 Ohio App.3d 270, 274-277 (Ohio App. 12th Dist. September 17, 2007).

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> 1. The state failed to present sufficient evidence to sustain appellant's convictions for complicity to illegal possession of chemicals for the manufacture of drugs and for complicity to theft.

> 2. The state failed to present sufficient evidence to sustain appellant's conviction for breaking and entering.

> 3. The expert opinion testimony given by Lt. Pierce regarding a 'dragger pump' [sic] reading was not based upon a scientifically reliable and objectively verifiable test, and was not validly derived from widely accepted knowledge, facts or principles.

> 4. The defendant['s attorney] was ineffective for failing to object to the expert opinion testimony regarding 'Dragger pump' [sic] and pH results where there was no disclosure by the prosecution of the intent to use such test results, and there was no foundation for the expert opinion testimony regarding those results.

On September 17, 2007, the appellate court affirmed the trial court's judgment. *Id.* On February 6, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Gragg,* 116 Ohio St.3d 1508 (2008).

On October 1, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. A petitioner is denied a fair trial when the trial court admits expert opinion testimony regarding a "reading" that was not based upon scientifically reliable, and objectively verifiable test, or not validly derived from widely accepted knowledge, facts, or principles.

2. A petitioner is deprived of the effective assistance of counsel when trial counsel fails to object to the admission into evidence of improper expert opinion testimony.

3. A petitioner is deprived of due process of law when the petitioner's conviction is based upon insufficient evidence.

It is the position of the respondent that petitioner's claims fail to present an issue appropriate for federal habeas corpus review, are waived, or without merit.

## CLAIM THREE

This Court will first consider claim three, in which petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions. The state appellate court rejected this claim as follows:

In reviewing a claim of insufficient evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 70, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. *See State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019.

In the case at bar, appellant's convictions were based mostly on circumstantial evidence. However, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. Crutchfield*, Warren App. No. CA2005-11-121, 2006-Ohio-6549, 2006 WL 3575492, ¶ 20. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 75. A conviction based on purely circumstantial evidence is no less sound than a

conviction based on direct evidence. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 27, 514 N.E.2d 394.

Appellant was convicted of complicity in the illegal possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A) and 2923.03. Appellant argues that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he (1) possessed the anhydrous ammonia, (2) aided Cook in possessing the anhydrous ammonia, or (3) shared Cook's alleged intent to use the anhydrous ammonia to manufacture methamphetamine.

Under R.C. 2925.041(A), "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C.] 2925.04." Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 24 O.O.3d 155, 434 N.E.2d 1362. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *Id.* "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

"Complicity" is defined in R.C. 2923.03(A)(2) as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To aid and abet is " '[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.' " *State v. Johnson* (2001), 93 Ohio St.3d 240, 243, 754 N.E.2d 796, quoting Black's Law Dictionary (7th Ed.1999) 69. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the

criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *Johnson* at syllabus.

Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158, ¶ 29. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 23 O.O.3d 265, 431 N.E.2d 1025. "[T]here must be some level of active participation by way of providing assistance or encouragement." *State v. Nievas* (1997), 121 Ohio App.3d 451, 456, 700 N.E.2d 339.

Upon thoroughly reviewing the record, we find that the evidence was sufficient to support a finding that appellant was guilty of complicity to illegal possession of chemicals for the manufacture of drugs. The state presented circumstantial evidence that appellant knowingly aided and abetted Bryan in the commission of the offense.

We initially note that although appellant never physically possessed the anhydrous ammonia, the substance was in his constructive possession. Appellant testified that he smelled the anhydrous ammonia as they were driving away from the Miller property. Further, although he was allegedly "heavily intoxicated," there was unrebutted testimony that he gave directions to Wilma to get back to Bryan's house following the theft of the anhydrous ammonia. Thus, appellant was conscious of the presence of the anhydrous ammonia and able to exercise dominion and control over it, even though it was not within his immediate physical possession. *Hankerson*, 70 Ohio St.2d at 91, 24 O.O.3d 155, 434 N.E.2d 1362.

The following evidence established beyond a reasonable doubt that appellant aided and abetted Bryan in possessing the anhydrous ammonia with the intent to manufacture methamphetamine. There was unrebutted testimony that appellant

directed Wilma on how to get back to Bryan's house following the theft and while the car smelled strongly of ammonia. In addition, appellant had a physical reaction to the presence of the substance in the car. Recovered in the car were several items that could be used to manufacture methamphetamine (funnels, gloves, and an air compressor) and items that could only be used to manufacture methamphetamine (cans of starter fluid with puncture holes). When simply asked whether the Jeep was the car that Wilma usually drove, appellant volunteered to explain why these items were in the car. Appellant denied that they were used to manufacture methamphetamine. Bryan testified that even though he has used methamphetamine in the past, and even though it was difficult to handle the very volatile anhydrous ammonia in Wilma's car, he did not intend to use the substance to manufacture methamphetamine. Rather, he was going to drive with the jar to another town to sell it to a friend.

As previously noted, to aid and abet is to assist or facilitate the commission of a crime or to promote its accomplishment. *Johnson*, 93 Ohio St.3d at 243, 754 N.E.2d 796. Participation in criminal intent may be inferred from conduct after the offense is committed. *Id*. at 245, 754 N.E.2d 796. Considering all of the foregoing facts and circumstances in the light most favorable to the prosecution, we find that the evidence is sufficient to support appellant's conviction for complicity to illegal possession of chemicals for the manufacture of drugs.

Appellant was also convicted of complicity in theft in violation of R.C. 2913.02(A)(1) and 2923.03. Appellant argues that the evidence presented at trial was insufficient to establish that he aided Cook in stealing the anhydrous ammonia. Rather, appellant was merely along for the ride when the theft occurred and did not know Cook intended to steal the anhydrous ammonia. Under R.C. 2913.02(A)(1), "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." Appellant agrees that the anhydrous ammonia was taken without the consent of its owner.

There was testimony at trial that Bryan's girlfriend knew of

Bryan's plan to steal anhydrous ammonia before he left his house with appellant and Wilma. Appellant claimed that Bryan needed a ride (in the middle of the night) to go to a relative's house to get money for his children's breakfast before they went to school (even though it was a Saturday). So "in the kindness of [his] heart and [Wilma's] heart you know [they] went and took him there." Appellant was allegedly intoxicated throughout the night. Yet he was able to remember that no one talked about stealing anhydrous ammonia and was able to direct Wilma back to Bryan's house after the theft. Appellant testified that he could smell the anhydrous ammonia as they were driving. Appellant also testified as to his physical reactions to the substance.

Considering all of the foregoing facts and the circumstances surrounding the theft in the light most favorable to the prosecution, we find that the evidence is sufficient to support appellant's conviction for complicity in theft. The state presented evidence that appellant knowingly aided and abetted Bryan in obtaining or exerting control over the anhydrous ammonia without Miller's consent and with purpose to deprive Miller of the substance. Appellant's first assignment of error is overruled.

***

Appellant was convicted of breaking and entering in violation of R.C. 2911.13(B), which provides: "No person shall trespass on the land or premises of another, with purpose to commit a felony." Appellant argues that while a trespass may have occurred, the evidence presented at trial was insufficient to establish that appellant knew he trespassed or that he had the purpose to commit a felony because he was highly intoxicated that night.

The offense of breaking and entering requires a defendant to have the specific intent of trespassing with the purpose to commit a felony. *See State v. Copeland* (Jan. 18, 2002), Montgomery App. No. 18711, 2002 WL 63161. The purpose to commit a felony may be proved by direct or circumstantial evidence. Furthermore, it is not necessary for the purpose to

commit a felony to be formed before or at the time the initial trespass or entry is achieved. *State v. Bowling* (Aug. 12, 1985), Clermont App. No. CA85-01-001, at 5, citing *State v. Jones* (1981), 2 Ohio App.3d 20, 2 OBR 21, 440 N.E.2d 580 (the "purpose to commit a felony" element in R.C. 2911.13(B) may be formed while the trespass is in progress, and the plan need not be fashioned prior to the trespass).

Appellant testified that because he had drunk several beers that night and taken the prescription medication Xanax earlier that day, he was highly intoxicated. Wilma testified that at Bryan's house, appellant was really drunk and could hardly walk. By contrast, there was no testimony from the officers present at the scene that appellant was or appeared to be intoxicated or that he had trouble walking. The Ohio Supreme Court has stated that "intoxication, even severe intoxication, can co-exist with purpose." *State v. Hicks* (1989), 43 Ohio St.3d 72, 74-75, 538 N.E.2d 1030. At trial, there was no evidence that appellant had been too intoxicated to form a purposeful intent. *See Copeland.*

Given that (1) at least one person knew of Bryan's plan to steal anhydrous ammonia before he left his house with appellant and Wilma, (2) Bryan and appellant had known one another for several years, Bryan was a methamphetamine user, and had previously been arrested for stealing anhydrous ammonia from the Miller property, (3) appellant and Wilma allegedly agreed to give Bryan a ride in the middle of the night to get money from his relatives for school purposes for his children the next day (a Saturday), (4) Wilma's car traveled 400 to 500 feet behind Miller's house to reach the storage tanks, (5) testimony at trial was uncontroverted that the vehicle appellant was traveling in trespassed onto the Miller property, (6) although not prompted, appellant volunteered to explain why the funnels and cans of starter fluid were in Wilma's car, and (7) no evidence was presented at trial that even if appellant had been intoxicated, he was too intoxicated to form a purposeful intent, we find that considering all of the foregoing facts and the circumstances surrounding the theft in the light most favorable to the prosecution, the evidence is sufficient to support appellant's conviction for breaking and entering. Appellant's second assignment of error is overruled.

*State v. Gragg, supra,* 173 Ohio App.3d at 281-282. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on

13

a set of materially indistinguishable facts." *Id*. at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326). For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior

felony conviction. *Id.*

Petitioner does not dispute the factual findings of the state appellate court, but nonetheless contends that the evidence was insufficient to establish that he had any intent to commit the crime charged. *Petition*, at 5. However, "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra,* and for the reasons addressed by the state appellate court, this Court likewise concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction. Further, this Court may grant relief on petitioner's claim only if the state appellate court was "'objectively unreasonable' in concluding that a rational trier of fact could have found [petitioner] guilty beyond a reasonable doubt." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). The Court is not persuaded that petitioner has met this standard here.

Claim three is without merit.

## CLAIM ONE

In claim one, petitioner asserts that he was denied a fair trial due to improper admission of expert testimony by Lieutenant Price regarding testing the contents of a pickle jar for ammonia. The state appellate court rejected this claim as follows:

> At trial, the state presented the testimony of Lieutenant Pierce, the Ross County lab-certified methamphetamine technician.

Lieutenant Pierce testified that at the scene, he "got [his] Dragger [sic] pump. FN1 The Dragger pump tests if there is any ammonia in the air. I immediately tested it and it turned automatically purple, which stated that the air was polluted with ammonia. And then I did a PH and I believe the PH test was eight." According to Lieutenant Pierce, such a pH reading indicates that there are no acids and that "if it's not an acid, then it's ammonia." Appellant's attorney did not object to Lieutenant Pierce's testimony.

FN1. Draeger is the manufacturer of a brand of gas-detection kit. "The Draeger test is used to detect the presence of certain chemicals, including anhydrous ammonia. To conduct the test, * * * four steps [are] followed. * * * If the designated air contaminant is present, it reacts with the chemical reagent in the tube, producing a color change. See http:// www. afcintl. com/ tubemain. htm (last visited Mar. 11, 2004)." *West v. State* (Ind.App. 2004), 805 N.E.2d 909, 912, fn. 1. In *West*, the defendant was convicted of illegal possession of anhydrous ammonia after a Draeger test identified the contents of a fire extinguisher as anhydrous ammonia. West held that because the prosecutor failed at trial to establish the reliability of the Draeger test, the trial court erred by considering the Draeger results in violation of Indiana Evid.R. 702(b). *Id.* at 913-914.

On appeal, appellant argues that the trial court erred by admitting the Draeger test results because the state failed to establish the test's reliability in violation of Evid.R. 702. Appellant contends that Lieutenant Pierce testified on behalf of the state as an expert witness.

It is well established that errors that arise during a trial that are not brought to the attention of the trial court are ordinarily waived and may not be raised on appeal unless there is plain error. *State v. McKee* (2001), 91 Ohio St.3d 292, 294, 744 N.E.2d 737; *State v. Rigdon*, Warren App. No. CA2006-05-064, 2007-Ohio-2843, 2007 WL 1662245, ¶ 13. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *McKee* ;Crim.R. 52(B). Further, plain error applies only to prevent a manifest

miscarriage of justice. See *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

Contrary to appellant's assertion, Lieutenant Pierce's testimony was not offered as expert testimony. Thus, Evid.R. 702 was not implicated. In *McKee,* the Ohio Supreme Court held that "the experience and knowledge of a * * * lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *McKee,* 91 Ohio St.3d 292, 744 N.E.2d 737, at syllabus. Applying this holding to a case involving police identification of anhydrous ammonia, the Third Appellate District held that with regard to the identity of a chemical, the state is "entitled to establish the identity of a drug through circumstantial evidence as long as a lay witness has first hand knowledge and a 'reasonable basis-grounded either in experience or specialized knowledge-for arriving at the opinion expressed.'" *State v. Vogel,* Crawford App. No. 3-05-10, 2005-Ohio-5757, 2005 WL 2840641, ¶ 11, quoting *Asplundh Mfg. Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng.* (1995), 57 F.3d 1190, 1198. The Third Appellate District found that in light of the police officers' testimony as to their education, training, and experience with anhydrous ammonia and as to their observations on the night in question and their opinion that the chemical tested was anhydrous ammonia, the trial court did not err by allowing them to testify as to the identity of the anhydrous ammonia. *Id.*

In the case at bar, Lieutenant Pierce testified as to his education, training, and experience in the areas of methamphetamine and anhydrous ammonia. Lieutenant Pierce testified that based on the Draeger test results and the pH reading, the chemical found at the scene in the pickle jar was anhydrous ammonia. Based on *McKee* and *Vogel,* we find that Lieutenant Pierce was qualified to testify as a lay witness. The trial court therefore did not err by admitting Lieutenant Pierce's testimony as to the identity of the anhydrous ammonia. Appellant's third assignment of error is overruled.

*State v. Gragg, supra,* 173 Ohio App.3d 282-283.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); see *also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir.1980). Such were the circumstances here.

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to admission of Lieutenant Pierce's testimony, referred to above, regarding the Draeger test. The state appellate court rejected this claim as follows:

> To prevail on an ineffective-assistance-of-counsel claim, a criminal defendant must make the two-pronged showing set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, a defendant must show that his counsel's performance was deficient, that is, that it "fell below an objective standard of reasonableness." *Id.* at 687-688. Second, a defendant must show that his defense counsel's deficient performance prejudiced him, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. A failure to make a sufficient showing on either the "performance" or "prejudice" prong of the *Strickland* standard will doom a defendant's ineffective-assistance claim. *Id.* at 697.

> Appellant argues that his trial counsel was ineffective because

he failed to object to Lieutenant Pierce's expert witness testimony regarding the Draeger test results and the identity of the anhydrous ammonia. Contrary to appellant's assertion as stated in his fourth assignment of error, the record shows that the testing conducted by Lieutenant Pierce and the results of the testing were disclosed to appellant's trial counsel in the state's response to appellant's discovery request. As stated in the previous assignment of error, Lieutenant Pierce's testimony was not offered as expert testimony. Further, Lieutenant Pierce was qualified to testify as a lay witness regarding the identity of the anhydrous ammonia. There was therefore no basis for an objection to Lieutenant Pierce's testimony.

We therefore find that appellant's trial counsel was not ineffective for failing to object to Lieutenant Pierce's testimony regarding the Draeger test results and the identity of the anhydrous ammonia. Appellant's fourth assignment of error is overruled.

*State v. Gragg, supra,* 173 Ohio App.3d at 283-284. Petitioner has failed to establish that the state appellate court's rejection of his claim is unreasonable so as to justify federal habeas corpus relief. 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

First, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th

Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.*, at 697.

Defense counsel argued that petitioner was in the "wrong place at the wrong time with the wrong person." *Trial Transcript*, at 8. According to the defense, petitioner had been drinking beer and partying with Wilma Howland on the night in question, and had passed out from drinking too much alcohol at the time that Cook stole the anhydrous ammonia. He woke "because the smell of anhydrous was so strong and said hey get that stuff out of the vehicle and at that point the stuff was thrown out of the vehicle." *Id.* Thus, defense counsel did not dispute the identity of the chemical at issue, but argued that petitioner was not guilty of the charges against him because he had no idea that Cook was going to steal the anhydrous ammonia. *See id.* This apparent strategic decision of counsel was not constitutionally unreasonable, in view of the evidence submitted at trial.

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

\*\*\*

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland, supra*, 466 U.S. at 689-690.  The strategic decisions of counsel "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland, supra*, 466 U.S. at 690.  As noted by respondent, Pierce's testimony on the Draeger test was not required to establish that the jar held anhydrous ammonia.  Rodney Miller, the alleged victim, called police because he had tanks of anhydrous ammonia behind his house which were being stolen.  He woke up and saw a car and told his wife "well they're back there stealing anhydrous again" and called the sheriff.  *Trial Transcript*, at 13.  The car "just flew by the driveway and went on back there to the ammonia tank."  *Id.*, at 18.  He followed the vehicle as it left his driveway, calling the sheriff on his cell phone, until the sheriff stopped the car.  *Id.*, Sergeant Sears "detected an extremely strong odor of ammonia.  So strong in fact it  gave me a headache almost immediately" as he approached the car.  *Id.*, at 27.  Deputy Chris Clark "walked up to the vehicle and kind of stuck my head in and... could smell anhydrous ammonia."  *Id.*, at 50.  Pierce also detected a "strong odor of ammonia coming from... a pickle jar right by the vehicle."  *Id.*, at 64.  Additionally, the Ohio Court of Appeals concluded that Pierce's testimony was properly admitted under Ohio law.  For all of the foregoing reasons, petitioner has failed to establish that he was denied the effective assistance of counsel under the test set forth in *Strickland*, based on his attorney's failure to object to admission of Pierce's testimony regarding the Draeger test.

Claim two is without merit.

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. An*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge